JAMES CUNNINGHAM *vs.* CITY OF BOSTON.
ISAAC WOODWARD & another *vs.* SAME.

A superintendent of alien passengers appointed under *St.* 1837, *c.* 238, went upon a vessel arriving with alien passengers on board, and, showing the statute to the owner, told him that he was liable to pay head money for each alien passenger landed, (as he was in-deed required to do by an unconstitutional and therefore void clause of the statute,) but used no force and made no threats. The owner, through fear that, if he refused to pay, his passengers would not be allowed to land and his business would be broken up, promised to pay the money, and did pay it when called upon after the landing of the passengers, and, if he had refused to pay according to his promise, would not after-wards have been permitted to land any alien passengers. *Held,* that the payment was voluntary and not under duress, even if the superintendent told the owner at their first interview that he would not be allowed to land his alien passengers until the law had been complied therewith, and that he was there to enforce the law.

ACTIONS OF CONTRACT to recover back sums of money paid to the superintendent of alien passengers of the city of Boston at different times between the 20th of May 1843 and the 8th of May 1848, for alien passengers brought to Boston from the British provinces in steamboats owned by the plaintiffs. The *St.* of 1837, *c.* 238, under which these payments were made, was held unconstitutional by the supreme court of the United States in *Norris* v. *Boston,* 7 How. 283, reversing the judgment of this court in 4 Met. 282. Each case was submitted to the decision of the court upon facts agreed, which in the *first* case were as follows:

"The alien passengers so brought by the plaintiff were landed

in the city, and for each of them the plaintiff paid two dollars to the superintendent of alien passengers. The money in every instance was paid after the passengers were landed, in pursuance of the plaintiff's promise made to the superintendent before they were landed. The superintendent always went on board the plaintiff's boats, (in some instances before they came to the wharf,) took from the clerk his list of passengers, called over their names and required them to answer. He examined them whenever he deemed it necessary, and, while on board, made known to the plaintiff the amount of head money which he required him to pay. This amount the plaintiff promised to pay, and did in fact pay when called upon. The superintendent was accustomed to furnish the master of the boat with a copy of the law under which he acted, and to say to him that he, as also the owners and consignees, were liable to pay two dollars for each alien passenger landed. No force was used, nor were any threats made by the superintendent. The plaintiff yielded to the demand of the superintendent through fear that, if he refused to pay, his passengers would not be allowed to land, and that his business would be broken up. If he had refused to pay according to his promise, he would not afterwards have been permitted to land any alien passengers till he had paid the head money. The payments were made without protest and without notice by the plaintiff that he should seek to recover back the money. No demand was made on the city before the commencement of this action."

The facts stated in the *second* case were similar, except that " the superintendent, the first time he went on board the boat, said to one of the plaintiffs that he would not be allowed to land his alien passengers unless the requirements of the law were complied with, and that he was there to enforce the law; " that " one of the plaintiffs, before making the payment, told the superintendent that he considered the law unconstitutional; " and that " the plaintiffs paid the money because they felt themselves in honor bound to the superintendent, and because they feared that, if they refused to pay, they would be sued and their boat attached, and that they would not again be permitted to

land their passengers until they had actually paid the money."
These cases were argued at March term 1859.

*R. Choate & S. J. Thomas,* for Cunningham, and *E. Merwin,*
for the other plaintiffs, argued that the payments, having been
required by the defendant's officer pursuant to an unconstitu-
tional statute as a condition precedent to landing the passen-
gers, were exacted by a public officer purporting to act in dis-
charge of his duty, but having in fact no legal authority. to
require it, yet with power to enforce his claim by seizing and
detaining the vessel and preventing the passengers from being
landed; that the arrangement for landing them, having been
made after the officer had informed the master that the payment
must be made, and the master had agreed to comply with the
requisition, the landing of the passengers and the payment of
the money, must be regarded as parts of one transaction; that
the payment was therefore compulsory and not voluntary, and
the money might be recovered back, although no protest or
demand had been made; and cited *Norris* v. *Boston,* 4 Met.
284; *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 189;
*Boston* v. *Capen,* 7 Cush. 116; *Preston* v. *Boston,* 12 Pick. 7;
*Amesbury Manufacturing Co.* v. *Amesbury,* 17 Mass. 461;
*Kelly* v. *Bemis,* 4 Gray, 84; *Appleton Bank* v. *McGilvray,* 4
Gray, 518; *Ripley* v. *Gelston,* 9 Johns. 201; *Clinton* v. *Strong,*
9 Johns. 377; *Frye* v. *Lockwood,* 4 Cow. 454; *Chase* v. *Dwinal,*
7 Greenl. 134; *Elliott* v. *Swartwout,* 10 Pet. 137; *Bank of
United States* v. *Bank of Washington,* 6 Pet. 8; *Bend* v. *Hoyt,*
13 Pet. 267; *Maxwell* v. *Griswold,* 10 How. 256; *Steele* v.
*Williams,* 8 Exch. 625; *Morgan* v. *Palmer,* 2 B. & C. 729;
*Snowden* v. *Davis,* 1 Taunt. 359; *Shaw* v. *Woodcock,* 7 B. &
C. 73; *Townson* v. *Wilson,* 1 Campb. 396; *Parker* v. *Great
Western Railway,* 7 Man. & Gr. 293.

*J. G. Abbott,* for the defendant, argued that the statute gave
the superintendent no authority to oppose by force the landing of
the passengers; and that the payments, not having been made
in ignorance of any fact, or duress of person or property, or
threats of it, nor with any protest or notice of an intention to
reclaim them, but in pursuance of a voluntary promise previ-

ously made without consideration, could not be recovered back; and cited *Benson* v. *Monroe*, 7 Cush. 125; *Forbes* v. *Appleton*, 5 Cush. 115; *Rawson* v. *Porter*, 9 Greenl. 119; *Norton* v. *Marden*, 15 Maine, 45; *Fellows* v. *School District in Fayette*, 39 Maine, 559; *Smith* v. *Readfield*, 27 Maine, 145; *Webber* v. *Aldrich*, 2 N. H. 461; *Corey* v. *Gale*, 13 Verm. 639; *Sprague* v. *Birdsall*, 2 Cow. 419; *New York & Harlem Railroad* v. *Marsh*, 2 Kernan, 308; *Fleetwood* v. *New York*, 2 Sandf. 475; *Allentown* v. *Saeger*, 20 Penn. State R. 421; *Mayor &c. of Baltimore* v. *Lefferman*, 4 Gill, 425; *Mays* v. *Cincinnati*, 1 Ohio State, 268; *Christy* v. *St. Louis*, 20 Missouri, 143; *Robinson* v. *Charleston*, 2 Rich. 317; *Elliott* v. *Swartwout*, 10 Pet. 154, 155; *Brisbane* v. *Dacres*, 5 Taunt. 132; *Marriott* v. *Hampton*, 2 Esp. R. 546; *Brown* v. *M'Kinally*, 1 Esp. R. 279; *Knibbs* v. *Hall*, 1 Esp. R. 84; *Hamlet* v. *Richardson*, 9 Bing. 644.

BY THE COURT. The payment of the money sought to be recovered in these actions was voluntary, and not under duress The evidence fails to show any force or menace of force.

*Judgments for the defendant.*